PERRY LUMBER COMPANY, INC., APPELLANT,
v. DURABLE SERVICES, INC., APPELLEE.
710 N.W.2d 854

Filed March 24, 2006.    No. S-05-005.

Larry W. Beucke, of Parker, Grossart, Bahensky & Beucke, for appellant.

Jeffrey H. Jacobsen and William T. Wright, of Jacobsen, Orr, Nelson, Wright & Lindstrom, P.C., for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Perry Lumber Company, Inc. (Perry), appeals from an order of the district court for Phelps County entering judgment based on a jury verdict in favor of the defendant, Durable Services, Inc. (Durable). Perry brought suit against Durable claiming that Durable was responsible for a fire that damaged facilities owned by Perry. On appeal, Perry asserts that the district court erred in connection with certain rulings with respect to expert testimony presented by both parties regarding the cause of the fire. We conclude that the district court erred in failing to admit the testimony offered by Perry's witness as expert testimony and in limiting the weight the jury could give to such testimony. Such error was prejudicial to Perry and constituted reversible error. We therefore reverse the judgment of the district court, and we remand the cause for a new trial.

## STATEMENT OF FACTS

Perry owned and operated a lumberyard and retail sales store in Holdrege, Nebraska. Perry's facilities were remodeled in the early 1990's. As part of the remodeling, Durable designed and installed improvements to the heating and air-conditioning units. Durable's work included installing several duct heaters.

On January 21, 1999, Perry's facilities were damaged by a fire. Perry filed the present action against Durable, claiming that the fire was caused by Durable's improper construction and installation of the duct heaters. Perry asserted theories of recovery based upon negligence, breach of implied warranty, and breach of contract. Perry sought damages of approximately $1.3 million. The action went to trial, and judgment was entered based on a jury verdict in favor of Perry in the amount of $960,840. Durable appealed to this court. We concluded that the trial court had committed reversible error by ruling that Durable's expert could not testify concerning the results of his test which Perry had previously placed in evidence through the testimony of its own expert. We reversed the judgment of the district court and remanded the cause for a new trial. *Perry Lumber Co. v. Durable Servs.*, 266 Neb. 517, 667 N.W.2d 194 (2003).

On remand, prior to trial, Perry filed a motion in limine seeking an order excluding any opinion evidence of Durable's expert, William Buxton, regarding the origin and cause of the fire and any opinion evidence of Buxton to the effect that no expert could determine the origin or cause of the fire. The court overruled Perry's motion in limine and other motions in limine by each party with regard to the anticipated testimonies of other experts. The court stated in its order that

> after reviewing the qualifications of the experts, and assuming proper foundation is laid at trial, the objections go primarily to the weight the jury should give the opinions rather than to their admissibility under <u>Daubert v Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and <u>Schafersman v Agland Coop</u>, 262 Neb. 215, 631 N.W.2d 862 (2001).

The court reserved ruling on admissibility until foundation had been provided at trial.

The second trial was held November 29 through December 3, 2004. Perry presented the testimony of various witnesses, including James Wagner, who was chief of the Holdrege Volunteer Fire Department at the time of trial and was acting chief at the time of the fire at issue in this case. Wagner's duties as fire chief included investigating the origin and cause of fires. Wagner had over 30 years' experience investigating fires. Wagner testified regarding

his education and training in fire investigation which included approximately 40 classes offered by the State of Nebraska and by other entities. In those classes, Wagner had studied, inter alia, the National Fire Protection Association's publication No. 921 (NFPA 921), which provides guidelines for a scientific method of fire investigation.

Wagner testified that he was on the scene of the fire on January 21, 1999. After taking part in fighting the fire, Wagner investigated the fire. Wagner testified without objection that in his opinion, the origin of the fire was above the south office and that a duct heater that was in that area had suffered more damage than duct heaters in other areas. Wagner also testified that he had investigated to determine the cause of the fire. When Wagner was asked his opinion regarding the cause of the fire, Durable objected on the basis that although Wagner was qualified to testify as an expert regarding origin, he was not qualified to testify as an expert regarding cause.

After argument and further foundation testimony, the court ruled:

> Okay. I'm going to rule [Wagner] can answer the question based on the following: Even if he does not qualify as an expert to provide scientific knowledge, he would qualify under Rule 701. Even if he's not an expert, his testimony in the form of opinions is limited to those opinions that are — which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact at issue.
>
> So, I'm not necessarily, ladies and gentlemen of the jury, finding he is an expert, but he can testify based on his observations; and that's the weight you give this testimony.
>
> Objection overruled. The witness may answer the question.

Although the court did not read or summarize the text of "Rule 701" to the jury, we note that Nebraska Evidence Rule 701 provides:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

Neb. Evid. R. 701, Neb. Rev. Stat. § 27-701 (Reissue 1995). Following the court's ruling quoted above, Wagner testified that the fire was caused by some material that ignited inside the duct heater and that he had come to this conclusion by eliminating other ignition sources.

In addition to Wagner's testimony, Perry also presented testimony by Charles Hoffman, a deputy State Fire Marshal, and Lewis T. Strait, a fire investigator retained by Perry. Both Hoffman and Strait testified that they had investigated the fire pursuant to NFPA 921, and both testified that in their opinions, the origin of the fire was in the area above the south office. Hoffman testified that he could not give an opinion to a reasonable degree of certainty as to the cause of the fire, but he testified that possible ignition sources included elements found in the area of the point of origin. Strait testified that in his opinion, the cause of the fire was the buildup of material in the duct heater above the south office and that the material acted as fuel for the fire and was ignited by the coils of the duct heater.

In its defense, Durable presented, inter alia, the testimony of Buxton. Buxton was a fire investigator, and he testified regarding his training and experience in fire investigation. Buxton's training included sessions of various federal, state, and local training programs, and his experience included investigating between 3,500 and 4,000 fires over 30 years. Buxton also testified regarding his familiarity with NFPA 921 which he described as a "guide" and "an accepted practice for doing the origin and cause investigation of a fire." In discussing NFPA 921, Buxton stated that under its guidelines, if an investigator must assume evidence or information, then the investigator must conclude that the origin and cause of the fire are "undetermined."

Buxton had reviewed the testimony and reports of the experts who testified at the present trial and who had testified at the first trial in this case. Buxton testified that he considered the principles of NFPA 921 in reviewing such materials. When Durable asked Buxton whether he was able to form an opinion to a reasonable degree of certainty as to either the origin or the cause of the Perry fire, Perry objected on the basis of foundation and requested an opportunity to voir dire Buxton about his investigation. The court overruled Perry's objection and request to voir

dire and allowed Buxton to answer the question. Buxton testified that he "could not determine the origin of the fire because you would have to assume too many things." He also testified that in his opinion, the other experts who had testified regarding origin and cause of the fire had "assume[d] too many things . . . without having the evidence to back it up." Buxton then testified regarding specific assumptions that the other experts would have to have made. When Durable asked Buxton his opinion regarding whether any reasonable investigator following NFPA 921 would have been able to state to a reasonable degree of certainty an opinion as to the origin of the fire, Perry objected, and after argument outside the presence of the jury, the court sustained Perry's objection.

On cross-examination, Buxton acknowledged that he had not performed a site inspection or other procedures which were part of a fire investigation made pursuant to NFPA 921. He also testified that following an investigation pursuant to NFPA 921, an investigator can either make a determination as to the origin or cause or conclude that it is undetermined, but that an investigator must perform an investigation prior to making either conclusion. Following cross-examination, Perry moved the court to strike Buxton's testimony and his opinions on the basis that he had not performed a proper investigation pursuant to NFPA 921. The court denied Perry's motion to strike.

The case was submitted to the jury. The jury returned a unanimous verdict in favor of Durable, and, based on the verdict, the court entered judgment in Durable's favor. Perry appeals.

## ASSIGNMENTS OF ERROR

Perry asserts, restated, that the district court erred in (1) failing to perform its gatekeeping function under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001), with respect to the testimonies of Wagner and Buxton; (2) refusing to allow Wagner to give expert testimony regarding the cause of the fire and in instructing the jury that it must consider Wagner's testimony as lay testimony rather than as expert testimony; and (3) permitting Buxton to testify regarding the origin and cause of the fire.

## STANDARD OF REVIEW

Generally, a trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *City of Lincoln v. Realty Trust Group*, 270 Neb. 587, 705 N.W.2d 432 (2005). A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Id.*

## ANALYSIS

*The Trial Court's Ruling Regarding Wagner's Testimony Was Reversible Error.*

With regard to Wagner's testimony, Perry argues that the district court erred in failing to perform its gatekeeping function, refusing to allow Wagner to give expert testimony regarding the cause of the fire, and instructing the jury that it must consider Wagner's testimony as lay testimony rather than as expert testimony. We agree with Perry that on the record in this case, the court should have found Wagner to be an expert. Because the court failed to declare Wagner an expert and thereupon effectively directed the jury to circumscribe the weight to be accorded to Wagner's testimony, the ruling unfairly prejudiced Perry and constituted reversible error.

We note first that Perry does not appear to assert that Wagner's opinion relating to the origin and cause of the fire was completely excluded in this case. Instead, Perry's argument is that although Wagner's testimony was admitted, because of the court's comments to the jury, Wagner's testimony was effectively admitted only as lay testimony and the jury instructed to minimize its weight. We therefore consider Perry's claim surrounding the determination that Wagner's testimony was not admitted as expert testimony and the consequence of that determination relative to the fairness of the trial.

Four preliminary questions must be answered in order to determine whether testimony is admissible as expert testimony: (1) whether the witness qualifies as an expert pursuant to rule 702; (2) whether the expert's testimony is relevant; (3) whether the expert's testimony will assist the trier of fact to understand the evidence or determine a controverted factual issue; and (4)

whether the expert's testimony, even though relevant and admissible, should be excluded in light of Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995), because its probative value is substantially outweighed by the danger of unfair prejudice or other considerations. *Realty Trust Group, supra.*

The court in the present case did not fully explain why it did not admit Wagner's testimony as expert testimony. However, because the court admitted the testimony as lay testimony, we can assume that the court found that the testimony was relevant, that it would assist the jury to understand the evidence or determine a controverted factual issue, and that its probative value was not substantially outweighed by the danger of unfair prejudice or other considerations. We would agree with these assessments. Looking at the context, it is apparent that the court found that Wagner did not qualify as an expert pursuant to rule 702. We disagree with this determination.

■ We have stated that in determining whether a witness is qualified to testify as an expert, the court "must examine whether the witness is qualified as an expert by his or her knowledge, skill, experience, training, and education." *State v. Mason, ante* p. 16, 33, 709 N.W.2d 638, 653 (2006). In the present case, Wagner testified that he had over 30 years' experience investigating fires; that he had received education and training in fire investigation, which included approximately 40 classes offered by the State of Nebraska and by other entities; and that in those classes, he had studied, inter alia, fire investigation procedures pursuant to NFPA 921. Wagner's testimony also established that his investigation was based on NFPA 921, which he and other experts in this case recognized as an accepted approach to conducting fire investigations. We determine that the record reflects that Wagner had sufficient knowledge, skill, training, and experience to establish himself as an expert in fire investigation and was thus qualified to testify as an expert witness on issues regarding fire investigation. See, similarly, *Bayse v. Tri-County Feeds, Inc.*, 189 Neb. 458, 203 N.W.2d 171 (1973) (permitting fire chief to testify as expert regarding origin and cause of fire).

With respect to Perry's argument based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), we have stated: "If it is necessary for the

court to conduct a *Daubert* analysis, then the court must determine whether the reasoning or methodology underlying the expert testimony is scientifically valid and reliable." *Mason, ante* at 33-34, 709 N.W.2d at 653. With respect to the underlying reasoning and methodology, Wagner testified that he followed NFPA 921. We note that Wagner and the other experts in this case generally recognized NFPA 921 as setting forth procedures by which a fire investigation is conducted. In this regard, we further note that NFPA 921 has been accepted as a methodology in other cases. See, *Fireman's Fund Ins. v. Canon U.S.A., Inc.*, 394 F.3d 1054 (8th Cir. 2005); *Tunnell v. Ford Motor Co.*, 330 F. Supp. 2d 707 (W.D. Va. 2004); *Royal Ins. Co. of America v. Joseph Daniel Const.*, 208 F. Supp. 2d 423 (S.D.N.Y. 2002); *Travelers Property & Cas. Corp. v. General Elec.*, 150 F. Supp. 2d 360 (D. Conn. 2001). Durable does not appear to have challenged the scientific validity and reliability of the methodology set forth by NFPA 921, nor does anything in the record indicate that such methodology was the reason the court did not admit Wagner's testimony as expert testimony. We have recently observed that *Daubert* " ' "does not require that courts reinvent the wheel each time that evidence is adduced." ' " *Mason, ante* at 37, 709 N.W.2d at 656 (quoting *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001)). Based on the foregoing, a *Daubert* analysis of methodology was not necessary in this case and Perry's arguments to the contrary are unavailing. Instead of a *Daubert* issue, the issue before the court was whether Wagner was qualified as an expert in fire investigation. As noted above, the record demonstrates that Wagner was so qualified.

Because Wagner's testimony was admissible as expert testimony, we conclude that the district court erred when it admitted Wagner's testimony only as lay witness opinion. The combination of this ruling and the court's comments to the jury relative to the admission of Wagner's testimony constituted reversible error. To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about such evidence admitted or excluded. *Big River Constr. Co. v. L & H Properties*, 268 Neb. 207, 681 N.W.2d 751 (2004). Because

Wagner was allowed to give his opinion, Perry was not harmed in the sense that Wagner's testimony was completely excluded. However, when admitting Wagner's testimony, the court told the jury, "So, I'm not necessarily, ladies and gentlemen of the jury, finding he is an expert, but he can testify based on his observations; and that's the weight you give this testimony." By making this statement, the court limited the weight that the jury could give Wagner's testimony by stating that it should be given the weight of testimony based on personal observation but not the weight of expert testimony.

We have stated that determining the weight to be given expert testimony is uniquely within the province of the fact finder, and the jury, as the trier of fact, is entitled to determine the weight and credibility to be given to witnesses' testimony. *Hausman v. Cowen*, 257 Neb. 852, 601 N.W.2d 547 (1999). In this case, Wagner was the first expert to arrive at and evaluate the scene of the fire. The jury, having heard Wagner's testimony regarding his qualifications and the techniques he used to form his opinions, was entitled to determine the weight and credibility it would give to Wagner's testimony. However, by its ruling in this case, the court effectively circumscribed the weight the jury could give Wagner's testimony, and such limitation unfairly prejudiced Perry. Inasmuch as the cause of the fire was a critical issue of fact in this case, such error affected a substantial right of Perry and necessitates a new trial. We therefore conclude that it is necessary to reverse the judgment of the district court and to remand the cause for a new trial.

### Buxton's Testimony Was Admissible.

Although our resolution of Perry's assignments of error with regard to Wagner's testimony disposes of the appeal, we will consider Perry's assignment of error with regard to Buxton's testimony, because issues related to Buxton's testimony are likely to recur on remand for a new trial. An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings. *In re Estate of Rosso*, 270 Neb. 323, 701 N.W.2d 355 (2005).

Perry asserts that the court erred in permitting Buxton to testify regarding the cause of the fire after Buxton acknowledged

that he had not completed a proper investigation. Specifically, Perry argues on appeal that Buxton testified that the cause of the fire was "undetermined," which is a technical conclusion that one can come to only after having completed a proper investigation pursuant to NFPA 921. We find no merit to Perry's arguments with regard to Buxton's testimony.

Contrary to Perry's characterization of Buxton's testimony, our review of the record indicates that Buxton testified that he was not able to give an opinion as to cause. Buxton did not testify that he came to the technical conclusion that the cause was "undetermined." Buxton did testify that he had reviewed the other experts' testimony and that in his opinion, such experts did not have adequate information to form their opinions. Further, the court did not allow Buxton to answer Durable's question of whether he thought any investigator could have determined cause.

The thrust of Buxton's testimony therefore was not to give an opinion as to cause but to critique the investigations conducted and the opinions formed by Perry's experts. Testimony critiquing the procedures and opinions of another expert is an acceptable form of expert testimony. See *Lincoln Tel. & Tel. Co. v. County Board of Equalization*, 209 Neb. 465, 308 N.W.2d 515 (1981). Under the standards set forth above with regard to determining the existence of expert testimony, we determine that the record reflects that Buxton had sufficient knowledge, skill, training, and experience to establish himself as an expert in fire investigation and that Buxton was qualified to testify as an expert witness on issues regarding fire investigation. See *State v. Mason, ante* p. 16, 709 N.W.2d 638 (2006). Because Buxton was qualified to testify as an expert in fire investigation, he was qualified to critique the investigations conducted and the opinions offered by other witnesses in this case. We therefore conclude that the district court did not abuse its discretion in admitting Buxton's expert testimony, and Perry's assignment of error relative to Buxton's testimony is without merit.

## CONCLUSION

We conclude that the district court did not err in admitting Buxton's expert testimony. However, we conclude that the court

did err in failing to find that Wagner's testimony was admissible as expert testimony and by effectively directing the jury that it should not give Wagner's testimony the weight it would give to expert testimony. Such error unfairly prejudiced Perry and constitutes reversible error. We therefore reverse the judgment of the district court and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

WRIGHT, J., not participating.