Mike Roseland et al., appellees and cross-appellants,
v. Strategic Staff Management, Inc., appellant
and cross-appellee.

708 N.W.2d 841

Filed January 24, 2006.   No. A-04-627.

Jeffrey A. Silver for appellant.

Mary L. Hewitt, of McGill, Gotsdiner, Workman & Lepp, P.C., L.L.O., for appellees.

Inbody, Chief Judge, and Irwin and Moore, Judges.

Moore, Judge.

## INTRODUCTION

Strategic Staff Management, Inc. (Strategic), appeals the decision of the Douglas County District Court finding that Mike Roseland, Tim Brotzki, Tom Lentz, and Loyce Meister (formerly known as Loyce Farnan), hereinafter referred to collectively as "the appellees," were entitled to be compensated for accrued but unused vacation time in the amount of $8,788.29 plus attorney fees of $2,197.07. The appellees have cross-appealed, contending that the district court erred in denying their request for attorney fees in excess of the statutory minimum and in denying their request for an additional recovery of one to two times the amount of unpaid wages to be placed in a fund to be distributed to the common schools of Nebraska.

## STATEMENT OF FACTS

Strategic is a Nebraska corporation engaged in leasing em-ployees. The appellees have all been employees of Strategic as follows: Roseland was president, Lentz was vice president,

Brotzki was director of client services, and Meister was a marketing assistant.

In May 1998, Roseland, Brotzki, and Lentz each voluntarily submitted a notice of resignation of employment with Strategic. In July, Meister voluntarily submitted her notice of resignation of employment with Strategic. At the time of the voluntary resignations, the appellees had the following weeks of accrued vacation time: Roseland and Brotzki each had 3 weeks, Lentz had 1 week, and Meister had 2 weeks. Strategic did not pay the appellees for their accrued vacation time. In March 2000, the appellees each sent letters demanding payment for their unused vacation time, which Strategic has refused to pay.

On April 21, 2000, the appellees filed a lawsuit seeking judgment against Strategic in the amount of $8,788.29 under the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 2004). They also sought an award of all costs, reasonable attorney fees of not less than 25 percent of unpaid wages, an additional recovery of one to two times the amount of unpaid wages to be placed in a fund to be distributed to the common schools of Nebraska, and such other further relief as the court deemed just and proper.

On the day of trial, the parties agreed to submit the matter to the court upon the following stipulated facts: At the time of the resignations, each party had accrued vacation time, and each party's salary or rate of pay was accurately listed in the petition. Roseland was requesting 3 weeks of accrued vacation pay valued at $4,038.45, Brotzki was requesting 3 weeks of accrued vacation pay valued at $2,307.69, Lentz was requesting 1 week of accrued vacation pay valued at $1,346.15, and Meister was requesting 2 weeks of accrued vacation pay valued at $1,096.

Additionally, various exhibits were received into evidence. Exhibits established that Strategic's employee handbook provides that for regular full-time employees, "[t]he amount of paid vacation time employees receive each year increases with the length of their employment." After 1 year of continuous service, employees are eligible for 1 week of paid vacation. After 2 years of continuous service, employees are eligible for 2 weeks of paid vacation. After 5 years of continuous service, employees are eligible for 3 weeks of paid vacation. According to Strategic's

employee handbook, "[y]our year of service begins on your hire date; i.e. if you began employment on April 15, you would be eligible for one week of vacation on April 15 of the following year, etc."

Exhibits established that the benefit modification policies and procedures incorporated into Strategic's employee handbook as of November 1, 1997, provided: "In the event that available vacation is not used by the end of the benefit year, it will not be carried over. Upon termination, employees will not be paid for unused vacation time." (Emphasis in original.) A revision made in April 1998 states: "Accrued but unused vacation will not be carried over from year to year. **Upon resignation or termination, employees will not be paid for vacation time available.**" (Emphasis in original.) It is undisputed that with regard to vacation pay, the exhibits set forth the policies in force at the time of resignation. Strategic's employee handbook also states: "In the event any statement or policy in this handbook conflicts with state or federal laws, it shall be deemed automatically amended to comply with all such state or federal laws."

Also admitted into evidence was an affidavit from the appellees' counsel setting forth that attorney fees and costs through September 30, 2003, were $7,323.87. The affidavit further set forth:

> This simple wage and hour matter has been unusually time consuming and costly in that [Strategic's] actions in this litigation appeared to serve the sole purpose of requiring counsel for the [appellees] to expend additional time and efforts to pursue this litigation which were unreasonable in light of the amount of damages sought to be recovered.

On November 19, 2003, the district court filed an order holding that Strategic's "policy of refusing to pay an employee for unused vacation time directly conflicts with state law and is, therefore, void." Thus, the court awarded the appellees the total amount of $8,788.29 requested for unused vacation time. Additionally, the court determined that because the appellees employed an attorney, they are entitled to attorney fees worth not less than 25 percent of the unpaid wages, or $2,197.07. Further, the court found that there was a reasonable dispute as to the fact that the wages were owed, and thus, the court declined to order Strategic to pay to the

common schools fund an amount equal to the judgment. Finally, the court did not find that Strategic's conduct was willful and therefore declined to order Strategic to pay to the school fund an amount double the unpaid wages. Strategic has timely appealed to this court, and the appellees have filed a cross-appeal.

## ASSIGNMENTS OF ERROR

On appeal, Strategic contends the district court erred in determining that contrary to Strategic's employee handbook, pay for accrued but unused vacation time can be collected upon a voluntary resignation. In Strategic's brief, it also argues that it is entitled to a credit for the 2 weeks' wages paid to the appellees at the time of their resignations and for which they performed no services for Strategic. However, this was not assigned as an error. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Semler v. Sears, Roebuck & Co.*, 268 Neb. 857, 689 N.W.2d 327 (2004); *Scurlocke v. Hansen*, 268 Neb. 548, 684 N.W.2d 565 (2004). Therefore, we refuse to further consider this issue.

On cross-appeal, the appellees contend that the district court erred in denying their request for attorney fees in excess of the statutory minimum and in denying their request for an additional recovery of one to two times the amount of unpaid wages to be placed in a fund to be distributed to the common schools of Nebraska.

## STANDARD OF REVIEW

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997).

## ANALYSIS

*Issues Raised by Strategic on Appeal.*

Strategic contends the district court erred in determining that contrary to Strategic's employee handbook, pay for accrued but unused vacation time can be collected upon a voluntary resignation.

Section 48-1230 provides in part: "Whenever an employer, other than a political subdivision, separates an employee from the payroll, the unpaid wages shall become due on the next regular payday or within two weeks of the date of termination, whichever is sooner." "Wages" are defined under the Nebraska Wage Payment and Collection Act as "compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis." See § 48-1229(4). The term "fringe benefits" includes "sick and vacation leave plans, disability income protection plans, retirement, pension, or profit-sharing plans, health and accident benefit plans, and any other employee benefit plans or benefit programs regardless of whether the employee participates in such plans or programs." See § 48-1229(3).

As applied to the instant case, pursuant to the Nebraska Wage Payment and Collection Act, wages include fringe benefits, such as vacation leave plans, "when previously agreed to and conditions stipulated have been met by the employee." See § 48-1229(4). According to Strategic's employee handbook, vacation leave was determined by years of employment. Thus, once an employee had completed 1 year of continuous service, he or she had earned 1 week of vacation. The only "condition" required by Strategic in order to earn vacation leave was continuous service for the requisite period of time.

However, Strategic's employee handbook also clearly states that employees will not be paid for unused vacation time upon the employee's resignation or termination of employment. In other words, there are no conditions in Strategic's employee handbook that would allow for payment of unused vacation time upon an employee's resignation or termination of employment.

In *Professional Bus. Servs. v. Rosno*, 268 Neb. 99, 680 N.W.2d 176 (2004), the Nebraska Supreme Court considered whether a terminated employee was entitled to earned but unused vacation leave pay. The court found that "vacation and sick leave pay is characterized as an 'employee benefit plan' under the terms of the Nebraska Wage Payment and Collection Act." *Id.* at 114, 680 N.W.2d at 187. The court referred to the provisions of the company's employee handbook to determine whether the employee

was entitled upon termination of employment to receive his earned but unused vacation leave pay. Such employee handbook provided that " '[n]o payment for vacation shall be payable for termination during the work year,' " with some exceptions. *Id.* The court found that the employee's case fell within one of the listed exceptions and that thus, he was entitled to receive payment for his accrued but unused vacation time. In other words, the employee met the "conditions stipulated" by the employer for payment, as set forth under the Nebraska Wage Payment and Collection Act.

The Nebraska Supreme Court in *Rosno, supra,* did not specifically address whether the controlling language of the company's employee handbook was contrary to state statute, which differs from the facts in the instant case wherein the district court found that the language contained in Strategic's employee handbook conflicted with state law. However, we infer from the language used by the Supreme Court in *Rosno, supra,* that the court's determination of the issue of entitlement to payment for unused vacation time was based upon the language of the company's employee handbook, not upon a finding that the provisions of such handbook violated the Nebraska Wage Payment and Collection Act or that a policy limiting an employee's right to payment for unused vacation time violates the act.

In sum, *Rosno* provided that the issue of entitlement to payment for unused vacation time upon termination of employment depends upon the language contained in a company's employee handbook. In the instant case, Strategic's employee handbook specifically provides that employees will not be paid for vacation time available upon the employee's resignation or termination of employment. Based upon the clear language of Strategic's employee handbook, the appellees are not entitled to payment for unused vacation time upon resignation or termination of employment. Thus, the district court erred as a matter of law in awarding the appellees judgment for the unused vacation time. It likewise follows that the district court's award of $2,197.07 in attorney fees is reversed.

*Issues Raised by Appellees on Cross-Appeal.*

The appellees contend that the district court erred in denying their request for attorney fees in excess of the statutory minimum

and in denying their request for an additional recovery of one to two times the amount of unpaid wages to be placed in a fund to be distributed to the common schools of Nebraska. Because judgment should not have been entered in favor of the appellees, it follows that these claims are denied.

## CONCLUSION

In sum, we find that the district court erred as a matter of law in awarding the appellees judgment for the unused vacation time. Thus, the judgment in favor of the appellees is reversed, as is the district court's award of $2,197.07 in attorney fees.

REVERSED.

INBODY, Chief Judge, dissenting.

I must respectfully dissent from the portion of the majority opinion that finds that the district court erred as a matter of law in determining that the issue of entitlement to payment for unused vacation time is based upon the wording of a company's employee handbook. The majority relies on *Professional Bus. Servs. v. Rosno*, 268 Neb. 99, 680 N.W.2d 176 (2004), for the proposition that the language contained in a company's employee handbook is dispositive of whether an employee is entitled to be paid for earned but unused vacation time upon the employee's termination of employment or resignation. However, I think an equally reasonable inference of the *Rosno* opinion is that a determination of whether that particular company's employee handbook was in violation of Nebraska law was unnecessary because the employee's situation fell within one of the enumerated exceptions listed in such employee handbook, thus requiring payment of vacation benefits.

If such an analysis had been necessary, I believe that *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997), is instructive. In that case, the Nebraska Supreme Court held that an employment agreement that defines wages contrary to the Nebraska Wage Payment and Collection Act's statutory definition of wages is void. This is because a company cannot circumvent the statutory definition of wages through its employment agreement. *Id.*

Pursuant to the Nebraska Wage Payment and Collection Act, wages include fringe benefits, such as vacation leave plans, "when

previously agreed to and conditions stipulated have been met by the employee." See Neb. Rev. Stat. § 48-1229(4) (Reissue 2004). It is undisputed that the appellees had each accrued the vacation time they claimed. Thus, the appellees had met the only "condition" required for entitlement of that vacation leave, and upon termination of employment, they were entitled to be paid for their accrued, but unused, vacation leave. The appellees' vacation leave is classified as "wages" by the Nebraska Wage Payment and Collection Act and was required to be paid either on the next regular payday or within 2 weeks of the date of termination of employment, whichever is sooner. See Neb. Rev. Stat. § 48-1230 (Reissue 2004).

The provisions of Strategic's employee handbook which provide to the contrary, i.e., that payment for earned but unused vacation time is forfeited upon resignation or termination of employment, are in direct violation of the Nebraska Wage Payment and Collection Act. Therefore, these provisions of Strategic's employee handbook are void. Further, I note that Strategic's employee handbook states: "In the event any statement or policy in this handbook conflicts with state or federal laws, it shall be deemed automatically amended to comply with all such state or federal laws." I would affirm the district court's order granting judgment in favor of the appellees in the amount of $8,788.29 and awarding attorney fees in the amount of $2,197.07.